# JANUARY TERM, 1958.

*In re* WILLIAMS ESTATE.

1. WILLS—MENTAL COMPETENCY—CONTEST—EVIDENCE—ATTORNEY—CONCLUSIONS.

Consideration will not be denied in a will contest to the testimony of an attorney with whom testatrix had consulted about the time the will in question had been executed and who had refused to make a will for her because she was "thoroughly incompetent," where proponent of the will cross-examined such attorney and did not object, at the time of introduction, to the testimony as being based on conclusions.

2. SAME—MENTAL COMPETENCY—QUESTION FOR JURY.

The question of the testamentary capacity of testatrix was properly submitted to jury in a will contest, where the testimony was sharply in conflict and there were 7 witnesses on each side.

3. SAME—CONTEST—MENTAL COMPETENCY—INSTRUCTIONS.

Claim that trial court committed error by instructing jury in will contest that it took no more mentality to make a will than it did to make a deed *held*, not erroneous when considered either by itself or in conjunction with remainder of instruction given.

Appeal from Clinton; Cash (Paul R.), J. Submitted October 10, 1957. (Docket No. 40, Calendar No. 47,243.) Decided March 4, 1958.

In the estate of B. Maude Williams, deceased, will ·originally was not contested and was admitted in pro-

REFERENCES FOR POINTS IN HEADNOTES

[1] 57 Am Jur, Wills §§ 99, 104, 134.
[2] 57 Am Jur, Wills § 146.
[3] 57 Am Jur, Wills §§ 69, 930.

bate court, with John Patton, now the proponent, named as administrator with will annexed. Contest then filed by Roxie Cramer, and appealed by her to circuit court. Verdict and judgment for contestant denying admission of will to probate. Proponent appeals. Affirmed.

*Hughes & Campbell (Newman, Chamberlain, Jones & Mackay,* of counsel), for proponents.

*Leo W. Corkin* and *Jack Walker,* for contestants.

KELLY, J.  This appeal involves the validity of a May 28, 1951, will of deceased, B. Maude Williams. Deceased was 81 years of age when she executed said will, and within 1 year thereafter she was adjudged incompetent to manage her property and a guardian was appointed for her.  At the time the guardian was appointed, and at the time the will was drawn, deceased was the owner of 180 acres of farm land, valued at approximately $100 per acre, and personal property and cash in bank of a value of approximately $14,000.

At the time of the drawing of the will, and at the time of deceased's death, deceased had only 3 blood relatives who would have taken under the statute if no will had been executed, namely—3 second cousins. Deceased recognized 2 of these cousins by providing for each with a $1 bequest.  The remainder of her estate she bequeathed to one Ethel Patton, who was not related to deceased by blood or by marriage, and who would have had no claim on decedent's estate except through the will in question.

The contestant, Roxie Cramer (nee Patton), is not related to the deceased by blood or marriage. She is the daughter of Frank Patton, and the beneficiary under the will in question is the wife of John Patton, the brother of Frank Patton.

Contestant introduced in evidence at the trial, will of B. Maude Williams, executed on July 13, 1950, providing that Frank Patton (Roxie's father), was to inherit all of her real and personal property and in the event he predeceased testatrix, then said property was to go to Roxie.

According to the record submitted to this Court, the only issue presented to the jury and the trial court involved the validity of the will dated May 28, 1951, giving to Ethel Patton testatrix's property. The inference, however, can be drawn that contestant proceeds on a theory that if this will is found to be invalid she will take under a previous will bearing date July 13, 1950.

Testatrix's husband died in 1945 and she continued to remain and live on the farm. In 1946 or 1947 Frank Patton endeavored to assist testatrix in the management of her farm. The appendices do not disclose the relationship between testatrix, or her husband, with Frank Patton previous to 1947, other than the testimony of Roxie Cramer that she and her father lived about a mile and a half from testatrix and that during the time her father was endeavoring to assist in the management of the farm she visited testatrix 2 or 3 times a week.

In the spring of 1948, Frank Patton's brother, John, and John's wife, moved a house trailer onto testatrix's farm, locating said trailer close to her home. Contestant testified that John Patton purchased the trailer because he was forced to leave the home where he was living. His original thought at the time of purchase was that he would place it on her father's property (Frank Patton's farm) and, contestant said, her father asked and obtained permission from testatrix to place the trailer on her farm.

Frank Patton endeavored to oversee and run testatrix's farm until he became ill in the latter part

of 1951. The appendices do not disclose proof that John Patton and his wife rendered any assistance or services to testatrix from the time they moved their trailer on her farm in 1948 until the time the guardian was appointed for testatrix in 1952. At that time the guardian entered into a contract and agreement with John and Ethel Patton whereby they were ·to render certain services.

Five exhibits were introduced in evidence, pur-·porting to show that at 5 different times between February 27, 1950, and May 28, 1951, deceased endeavored to dispose of her property by will.

The first exhibit, bearing date February 27, 1950, was drawn up in the handwriting of deceased's attorney. It left her property to Frank Patton, and, if he failed to survive her, then to his daughter, Roxie.

The second exhibit, bearing date of April 22, 1950, was in effect the same as the first exhibit, except that the attorney had had the will typewritten.

The third exhibit, dated May 17, 1950, was allegedly in deceased's handwriting. In this will she left $1 to each of 2 cousins, and the rest of her property to Ethel Patton. This will was invalid for lack of proper execution, and deceased subsequently denied that the will was hers.

The fourth exhibit, bearing date July 13, 1950, was drawn up by her attorney. Again she left everything to Frank Patton and, in the event of his death, to his daughter, Roxie.

The fifth exhibit, bearing date May 28, 1951, is the will in question. It is, purportedly, in deceased's handwriting, and $1 is bequeathed to each of 2 of her cousins and the balance of her property and estate to Ethel Patton.

Contestant, in addition to the 5 exhibits referred to above, also introduced testimony of attorney Timothy M. Green, of St. Johns, Michigan. His testi-

mony disclosed that at or about the time the will in question was executed the testatrix visited his office in an endeavor to make a disposition of her farm by deed. Green stated that this visit occurred some time during the last week of May or the first week of June, 1951; that she informed him that "a couple" by the name of Patton were trying to get her farm and that she was trying to stop them by making a deed to another person; that he refused to prepare such a deed because he felt she was "thoroughly incompetent."

Appellant did not object to Attorney Green's testimony at the trial and availed himself of the privilege of cross-examination. We cannot agree with appellant that attorney Green's testimony should not be considered because it was based on conclusions, and especially in view of the fact that no such point was made at the time of the introduction of such testimony.

In addition to contestant and Attorney Timothy Green, 5 other witnesses were offered to prove that testatrix lacked testamentary capacity. Proponent, his wife, and 3 witnesses testified that testatrix possessed such capacity. Two other witnesses said they were of the opinion that she possessed that capacity but that there were certain queer things about her.

This appeal is presented to this Court on the main question as to whether the trial court erred in submitting the question of deceased's testamentary capacity to the jury. In deciding the issue we do not believe that we would be of assistance to the bench or bar by detailing or outlining the testimony of the witnesses for or against the question of testamentary capacity. The appendices clearly show that the court did not err in submitting this case to the jury.

One remaining question is presented by appellant, namely: Did the court commit reversible error in its

instruction to the jury when the court told the jury that it took no more mentality to make a will than it did to make a deed?

Appellant's argument in this regard seems to be based upon the conclusion that because of this one sentence of instruction, which of and by itself is not erroneous, the jury could have or did infer that it required as much or more capacity to make a will than it did to make a deed. An examination of the instructions as a whole does not sustain appellant's contention in this regard.

Judgment affirmed. Costs to appellee.

DETHMERS, C. J., and CARR, SMITH, BLACK, EDWARDS, and VOELKER, JJ., concurred.

KAVANAGH, J., took no part in the decision of this case.